EL PUEBLO DE PUERTO RICO, apelado, *v.* RAMÓN L. SALIVA VALENTÍN, acusado y apelante.

*Número:* CR-89-1          *Resuelto:* 19 de junio de 1992

*Aurelio Saliva Mattei*, abogado del apelante; *Norma Cotti Cruz, Subprocuradora General*, e *Iván F. Fuster, Procurador General Auxiliar*, abogados de El Pueblo.

## SENTENCIA

Por adolecer la acusación de un defecto sustancial insubsanable *y por estar basada la convicción en prueba insuficiente, fundada en la detención ilegal del acusado* Ramón L. Saliva Valentín, revocamos la sentencia impuesta por el tribunal de instancia por alegada violación del Art. 168 del Código Penal, 33 L.P.R.A. sec. 4274. Veamos.

# I

El 7 de agosto de 1988 ocurrió un escalamiento en la escuela Segundo Ruiz Belvis, localizada en la Avenida Hostos en el sector de la Playa de Ponce, durante el cual fue sustraída ilegalmente una balanza propiedad de dicho plantel escolar. La investigación de dicho escalamiento recayó en el agente de la Policía de Puerto Rico Sr. Vladimir Salcedo.

Tres (3) días después de ser efectuado el escalamiento y la apropiación ilegal, el 11 de agosto de 1988, el agente Salcedo, a eso de las 11:40 de la noche, se encontraba de ronda por la Calle Padre Noel del referido sector. Fue entonces cuando pasaron frente a él y a un sargento que lo acompañaba dos (2) individuos en una bicicleta cargando una caja. Según surge de la exposición narrativa de la prueba, atestó el agente Salcedo que instantes más tarde "una persona lo detuvo y le dijo que el objeto que cargaban los susodichos individuos en la bicicleta *posiblemente* era un objeto hurtado" (énfasis suplido), por lo cual "siguió la dirección que le indicó la persona y llegó a la Avenida Padre Noel[, ] intersección con la 65 de Infantería de la Playa de Ponce ...". E.N.P., pág. 1. Allí detuvieron al que iba guiando la bicicleta, quien resultó ser el acusado y quien les mostró el contenido de la caja, que resultó ser una balanza.

Atestó el agente Salcedo que en esos momentos inquirió al acusado sobre la procedencia de la balanza y éste le indicó que se la había encontrado. Así, se procedió a ordenarle al detenido que se personara al Cuartel de la Policía de la Playa de Ponce. Una vez allí, se le detuvo por un período de alrededor de dos (2) horas mientras se le sometía a interrogatorio. Los agentes procedieron a ocupar la balanza que se encontraba dentro de la caja y que cargaban el acusado y su acompañante.

En fecha posterior, el 1ro de septiembre de 1988, luego

de haber confrontado el número de identificación de la balanza incautada con el de la balanza que fuera ilegalmente apropiada en el comedor de la escuela, y luego de haber sido ésta identificada por la empleada Gloria E. Alfonso Archeval, se presentó acusación contra el señor Saliva Valentín por alegada violación al Art. 168 del Código Penal, *supra*, sobre recibo y transportación de bienes apropiados ilegalmente.

Durante el acto del juicio, celebrado el 19 de octubre de 1988, el fiscal presentó el testimonio del agente Salcedo, según aquí relatado, y el testimonio de Doña Gloria E. Alfonso, quien atestó sobre el referido escalamiento y sobre el valor del objeto apropiado ilegalmente. En síntesis, según surge de la E.N.P., pág. 2, la testigo declaró lo siguiente:

> ... [Q]ue el 7 de agosto de 1988 ocurrió un escalamiento en el plantel donde trabaja y sustrajeron una balanza del comedor escolar; que identificó la balanza que le llevó el agente de la Policía de Puerto Rico Vladimir Salcedo como la que había sido sustraída en el referido escalamiento; *que dicha balanza tenía un valor de $204.00; que ella no tenía conocimientos periciales sobre el valor de objetos tales como la balanza en cuestión.* (Énfasis suplido.)

Finalizada la prueba de cargo, la defensa del apelante presentó una moción de absolución perentoria la cual le fue denegada.

La defensa no presentó prueba alguna para derrotar la inferencia permisible en cuanto a que los bienes ilegalmente apropiados habían sido recibidos a sabiendas de este hecho. En cuanto al valor del bien, la única prueba de la defensa consistió en intentar introducir una carta de 29 de agosto de 1988, suscrita por el Sr. Angel Goitía, Gerente de la empresa Hobart de Ponce, y dirigida al abogado defensor, de la cual se desprenden los precios de dicha firma de balanzas similares a la que fue objeto de la acusación en el caso. El tribunal sostuvo la objeción levantada por el

Ministerio Fiscal a la admisión de dicha prueba, por lo que quedó como prueba ofrecida y no admitida.

Terminados los procedimientos, el tribunal de instancia (Hon. Luis F. Pieraldi Cappa, Juez) emitió el fallo de culpabilidad ese mismo día 19 de octubre de 1988. El 21 de diciembre de 1988 el tribunal impuso sentencia condenatoria de seis (6) meses de reclusión sobre el apelante, concediéndole los beneficios de una sentencia suspendida. No conforme con tal dictamen, el acusado interpone recurso de apelación ante este Foro y plantea los siguientes señalamientos de error.

> A. Err[ó] el tribunal de instancia al desestimar nuestro planteamiento de que la acusaci[ó]n no imputaba delito y de que la prueba fue insuficiente.
> B. Err[ó] el tribunal de instancia al desestimar nuestro planteamiento de que para la ocupaci[ó]n de la balanza en el caso de autos se efectu[ó] un arresto y un registro ilegal. Alegato del apelante, pág. 3.

Vistos los alegatos sometidos por el apelante y el Hon. Procurador General, resolvemos.

## II

El Art. 168 del Código Penal, *supra*, lee de la manera siguiente:

"Recibo y Transportación de Bienes Apropiados Ilegalmente

Artículo 168.—

> Toda persona que compre, reciba, retenga, transporte, cargue o disponga de algún bien mueble, *a sabiendas* de que fue obtenido mediante apropiación ilegal, robo, extorsión, o cualquier otra forma ilícita, será sancionad[a] con pena de reclusión que no excederá de seis meses o multa que no excederá de quinientos dólares, o ambas penas a discreción del tribunal, si el valor del bien apropiado ilegalmente no llegare a doscientos dólares. Si llegare o excediere este valor, será sancionada con pena de reclusión por un término fijo de tres (3) años. De mediar cir-

cunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de cinco (5) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de dos años. El tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida o ambas penas." (Énfasis suplido.) 1984 Leyes de Puerto Rico 38–39.

Concede el apelante que el elemento de "a sabiendas", por ser de naturaleza subjetiva, puede ser válidamente inferido por el juzgador dadas las circunstancias particulares del caso. Sin embargo, alega que la prueba presentada al respecto, la cual se limitó al testimonio del agente Salcedo, que señaló que el acusado le dijo que se había encontrado el objeto, no es suficiente para activar razonablemente dicha inferencia. No le asiste la razón.

La permisibilidad de la adjudicación de conocimiento sobre la procedencia ilegal del bien poseído, en ausencia de una explicación plausible, lógica y razonable sobre el origen de los mismos por parte del acusado, está firmemente establecida en nuestro ordenamiento jurídico. Véanse: *Pueblo v. Vélez Matos*, 90 D.P.R. 9, 14 (1964); *Pueblo v. Rodríguez*, 91 D.P.R. 157, 161 (1964); *Pueblo v. Gagot Mangual*, 96 D.P.R. 625, 628 (1968); *Pueblo v. Batista Maldonado*, 100 D.P.R. 936, 938–939 (1972); *Pueblo v. Álvarez*, 105 D.P.R. 475, 477 (1976).

El apelante no presentó prueba alguna que controvirtiera el hecho inferido. El que se trate de una inferencia permisible y no de una presunción, *Pueblo v. Gagot Mangual*, supra, pág. 628, no releva al apelante de presentar prueba controvirtiendo los hechos sobre los cuales descansa la misma. De no hacerlo, podrá válidamente el juzgador adjudicar responsabilidad criminal en cuanto al conocimiento del apelante sobre el origen ilegal de los bienes encontrados en su posesión, si entiende que inferirlo lo permite razonablemente la prueba desfilada. *Pueblo v. Álvarez*, supra.

## III

Sin embargo, le asiste la razón al apelante en su planteamiento en cuanto a que incidió el tribunal de instancia *al no conceder la desestimación de la acusación por el hecho de que no imputaba delito.*

Según consta en los autos, la acusación sometida contra el apelante leyó de la manera siguiente:

> El referido acusado, RAMON L. SALIVA VALENTIN, allá en o para el día 11 de agosto de 1988, en Ponce, Puerto Rico, que forma parte de la jurisdicción del Tribunal Superior de Puerto Rico, Sala de Ponce, *ilegal, voluntaria, maliciosa y criminalmente, retuvo* un bien mueble consistente en una balanza propiedad del Departamento de Instrucción Pública *producto de un escalamiento* ocurrido en la Escuela Segundo Ruiz Belvis de la Playa de Ponce, siendo el valor del bien apropiado ilegalmente $204.95. (Énfasis suplido.) Apéndice, pág. V.

*Plantea el apelante que existe un defecto sustancial en la referida acusación por no imputar el elemento delictivo de "a sabiendas".*

El Art. 168 del Código Penal, *supra*, tipifica el delito de comprar, recibir, retener, transportar, cargar o disponer de algún bien mueble "*a sabiendas* de que fue obtenido mediante apropiación ilegal, robo, extorsión, o cualquier otra forma ilícita ...". (Énfasis suplido.) De su mera lectura surge claramente que "es elemento de este delito que la conducta se lleve a cabo 'a sabiendas' o con el conocimiento, de la obtención ilícita original del bien mueble". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, San Juan, Ed. Rev. C. Abo. P.R., 1986, pág. 295. Como se advertirá, este es un delito *especial de intención específica.*

De acuerdo con el Art. 7(1) del Código Penal, 33 L.P.R.A. sec. 3022(1), *el término "a sabiendas" implica conocimiento personal.* No requiere el conocimiento de la ilegalidad del acto u omisión.

El hecho de que de las circunstancias del caso el juzga-

dor pueda válidamente inferir el elemento mental de "a sabiendas", según discutiéramos con anterioridad, *no releva al Estado de su responsabilidad de imputar el mismo en la acusación.* Esto es así, pues, para que tales inferencias puedan considerarse en un caso específico, la denuncia o querella presentada contra el imputado tiene que imputarle el *elemento mental de "a sabiendas".*

Reiteradamente hemos resuelto que en nuestro ordenamiento jurídico procesal penal la denuncia y eventual acusación tienen como propósito notificar, a toda persona imputada de delito, la naturaleza y causa por la cual será procesada. Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1; Reglas 5, 34 y 35(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II; *Pueblo v. González Olivencia,* 116 D.P.R. 614, 617–618 (1985). Ello es así ya que el debido proceso de ley exige que el acusado esté adecuadamente informado de la naturaleza y extensión del delito que se le imputa para que pueda preparar adecuadamente su defensa. *Pueblo v. Meléndez Cartagena,* 106 D.P.R. 338 (1977). Este requisito se cumple con una acusación o denuncia que incluya una exposición de los hechos *esenciales* constitutivos del delito redactada en lenguaje sencillo, claro y conciso, para que pueda entenderla cualquier persona de inteligencia común. *Pueblo v. Flores Betancourt,* 124 D.P.R. 867 (1989). En esa empresa no se le exige al Ministerio Público ningún lenguaje estereotipado, técnico o talismánico en su redacción ni el uso estricto de las palabras dispuestas en el estatuto. *Pueblo v. Calviño Cereijo,* 110 D.P.R. 691 (1981). Sólo se le exige que el contenido, no el epígrafe, de la acusación o denuncia exponga *todos los hechos constitutivos del tipo delictivo.*

El examen de la acusación presentada contra el apelante demuestra que al mismo no se le imputó el elemento mental de "a sabiendas" requerido por el delito en cuestión. La referida acusación sólo imputa al acusado la retención

ilegal, voluntaria, maliciosa y criminal de un bien mueble producto de un escalamiento.

"Ilegalmente" significa todo acto en contravención a alguna ley, reglamento u orden. Art. 7(17) del Código Penal, 33 L.P.R.A. sec. 3022(17). "Maliciosamente" denota "la comisión de un acto dañoso, intencionalmente, sin justa causa o excusa y la consciente naturaleza del mismo". Art. 7(19) del Código Penal, 33 L.P.R.A. sec. 3022(19). Véase *Pueblo v. Castañón Pérez*, 114 D.P.R. 532, 536 (1983). "Voluntariamente", por último, "implica simplemente propósito o voluntad de cometer el acto, o de incurrir en la omisión a que se refiere". Art. 7(27) del Código Penal, 33 L.P.R.A. sec. 3022(27). "Criminalmente" significa actuar en contravención a la ley penal; es decir, la comisión de una "ofensa muy grave contra la moral o la ley, castigada por la ley o reprobada por la conciencia". I. Rivera García, *Diccionario de Términos Jurídicos*, New Hampshire, Equity Publishing Corp., 1976, pág. 57. Ninguno de estos adjetivos es sinónimo del término "a sabiendas" ni imputa el conocimiento específico de la procedencia ilegal del bien en el contexto del Art. 168 del Código Penal, *supra.*

La acusación no le imputó al apelante que poseía la balanza con conocimiento personal de que fue obtenida mediante apropiación ilegal. *Cf. Pueblo v. Díaz Breijo*, 97 D.P.R. 64 (1969). ¿Es ello un defecto de forma o uno substancial del pliego acusatorio?

La ausencia de imputar el elemento constitutivo de "a sabiendas" en la acusación y no subsanarla durante todo el proceso, hace nula la medida dispositiva del foro sentenciador en cuanto a dicho delito. *Como se sabe, contrario al procedimiento civil, en el procedimiento criminal (o en el sui géneris de la Ley de Menores) la prueba no puede enmendar las alegaciones del Estado en tales circunstancias.* El debido proceso de ley al cual es acreedor el imputado impide tal enmienda. Mucho menos cuando ya el tribunal sentenciador dictó sentencia en cuanto al referido delito.

# IV

Resta examinar el segundo señalamiento de error planteado por el apelante en el sentido de que erró el tribunal de instancia al resolver que la ocupación de la balanza no fue producto de un arresto y registro ilegal por ausencia de motivos fundados para arrestar conforme a la Regla 11(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

La referida Regla 11 dispone que puede efectuarse un arresto válido sin orden judicial por un funcionario del orden público bajo las circunstancias siguientes:

> (c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (*felony*), independientemente de que dicho delito se hubiere cometido o no en realidad. 34 L.P.R.A. Ap. II, R. 11(c).

Según surge del propio testimonio del agente Salcedo, éste vio pasar a los dos (2) individuos en la bicicleta cargando una caja y no sintió motivación de intervenir con éstos sino hasta que un alegado desconocido le llama la atención sobre el detalle de que en la caja "posiblemente" cargaban un objeto hurtado. En estas circunstancias, resulta irrazonable sostener que el señalamiento de un desconocido al respecto —de que en la caja posiblemente cargaban un objeto robado— sea suficiente para abundar y activar una determinación válida de motivos fundados por parte del agente, más aún cuando tal "confidencia" nada añadió a lo previamente observado por el agente.

El transitar en bicicleta portando una caja es un acto totalmente legal. Es responsabilidad del Estado probar la existencia de causa probable del policía para intervenir en estas circunstancias y derrotar la presunción de invalidez de la detención y el registro realizado sin previa orden judicial. Reglas 1 y 15 de Evidencia, 32 L.P.R.A. Ap. IV; *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986); *Pueblo v. Ríos Colón*, 129 D.P.R. 71 (1991); *Pueblo v. Rosario Igar-*

*túa*, 129 D.P.R. 1055 (1992). El comentario traído a la atención del policía por el desconocido no cumple ni siquiera mínimamente con los requisitos establecidos por este Tribunal en cuanto a la naturaleza, precisión y veracidad requeridas para que una "confidencia" pueda servir de base a una determinación razonable de causa probable, por parte de un agente de la uniformada, para arrestar. *Pueblo v. Flores Valentín*, 88 D.P.R. 913 (1963); *Pueblo v. Cruz Rivera*, 100 D.P.R. 345 (1971); *Pueblo v. Díaz Díaz*, 106 D.P.R. 348 (1977).

No surge del testimonio del agente Salcedo prueba sobre la confiabilidad del informando o que "confidencia" se relacionara o dirigiera a un acto, que no fuera el previamente observado por el agente, de dos (2) individuos en bicicleta cargando una caja.

La confidencia, sumada a la observación del agente de los dos (2) individuos cargando una caja en la cual era posible que hubiese un artículo robado, no es suficiente para sustentar razonablemente una alegación de motivos fundados para detener al imputado al amparo de la Regla 11(c) de Procedimiento Criminal, *supra. Pueblo v. Alcalá Fernández*, 109 D.P.R. 326 (1980); *Pueblo v. De Jesús Cordero*, 101 D.P.R. 492 (1973); *Pueblo v. Rosario Igartúa*, supra. La probabilidad de que en la caja se cargara un objeto robado, igual a la probabilidad de que en alguna de las casas del vecindario, en el interior de algún vehículo que por allí transitara o de que en los bolsillos de un transeúnte hubiesen objetos robados, era infinitamente menor a la probabilidad de que en cualquiera de esos lugares se encontrasen objetos lícitos y de procedencia honrada. La mera sospecha nunca ha sido suficiente para aprobar la intervención con un ciudadano por parte de un funcionario del Estado. *Pueblo v. Ríos Colón*, supra.

Bajo tales circunstancias, resolvemos que no existieron motivos fundados para sancionar, bajo un mínimo de razonabilidad, la detención del imputado al amparo de la Regla

11 de Procedimiento Criminal, *supra*. W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 3, Cap. 9, Secs. 9.2 y 9.3.

Nótese, además, que la detención se realizó tres (3) días después y en un lugar distante de donde ocurrió el escalamiento investigado por el agente Salcedo. Dado los hechos del caso, no hubo siquiera la observación de una articulación inusual de actos específicos que razonablemente pudieran sustentar una sospecha particular y objetiva de probable actividad delictiva. Siendo esto así, la detención realizada por el agente sin que concurriera el elemento requerido de suficiencia de motivos fundados vició cualquier registro subsiguiente. *Pueblo v. Rosario Igartúa*, supra.

Por los fundamentos expuestos, *se revoca la sentencia apelada.*(¹)

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. La Juez Asociada Señora Naveira de Rodón concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri no intervino. El Juez Asociado Señor Negrón García disintió con opinión escrita.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario General*

---

(¹) Adviértase que el hecho de que el apelante pueda haber cumplido la medida dispositiva no convierte este recurso en académico. El interés del apelante en que dicho delito y medida dispositiva desaparezcan de su expediente es suficiente para hacer esta controversia justiciable. *Correa Negrón v. Pueblo*, 104 D.P.R. 286 (1975). Por lo tanto, aun cuando la apelación aquí instada no interrumpió los efectos de la sentencia del juez sentenciador, 34 L.P.R.A. sec. 2236, los intereses en juego hacen esta controversia justiciable y no académica.

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

I

Otra vez prevalece una injusticia. *Sub silentio*, se deja sin efecto la decisión de *Pueblo v. Meléndez Cartagena*, 106 D.P.R. 338 (1971), en que rechazamos el planteamiento de insuficiencia de una acusación por omitir la palabra "a sabiendas". Allí, al igual que aquí, "[e]l apelante fue adecuadamente informado de los delitos por los que sería enjuiciado. Las alegaciones de la acusación, a los efectos de que éste actuó 'ilegal, voluntaria, maliciosa y criminalmente', son suficientes en derecho para imputar los delitos, aun en ausencia de la frase 'a sabiendas'. El contenido esencial de tal expresión está comprendido en las alegaciones citadas". Íd., pág. 342.

Como dijimos recientemente en nuestro disenso en *Pueblo en interés menor R.F.C.*, 130 D.P.R. 100, 114–115 (1992):

> Por definición del Código Penal, *a sabiendas* "implica conocimiento personal. No requiere el conocimiento de la ilegalidad del acto u omisión". 33 L.P.R.A. sec. 3022(1). *Ilegalmente* es "[t]odo acto en contravención de alguna ley, reglamento u orden"; *voluntariamente* aplica "a la intención con que se ejecute un acto, o se incurre en una omisión, implica simplemente propósito o *voluntad* de cometer el acto, o de incurrir en la omisión a que se refiere" (énfasis suplido), y *maliciosamente* significa "la comisión de un acto dañoso, *intencionalmente*, sin justa causa o excusa y la *consciente naturaleza del mismo*". (Énfasis suplido.) Art. 7(17), (27) y (19) del Código Penal, 33 L.P.R.A. sec. 3022.
>
> En buena lógica, el vocablo "voluntaria" conlleva una actuación por voluntad propia, espontánea. Y la palabra "intencionalmente" describe cualquier acto "[d]eliberado, de caso pensado, hecho a *sabiendas*". (Énfasis suplido.) *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, pág. 780.

## II

En el caso de autos, la acusación leía así:

El referido acusado, RAMON L. SALIVA VALENTIN, allá en o para el día 11 de agosto de 1988, en Ponce, Puerto Rico, que forma parte de la jurisdicción del Tribunal Superior de Puerto Rico, Sala de Ponce, *ilegal, voluntaria, maliciosa y criminalmente, retuvo un bien mueble consistente en una balanza propiedad del Departamento de Instrucción Pública producto de un escalamiento ocurrido en la Escuela Segundo Ruiz Belvis de la Playa de Ponce, siendo el valor del bien apropiado ilegalmente $204.95.* (Énfasis suplido.) Apéndice, pág. 5.

¿Puede sostenerse que Saliva Valentín (o su abogado) no entendieron de qué se acusaba? Con meridiana claridad, el Ministerio Público imputó que *"ilegal, voluntaria, maliciosa y criminalmente, retuvo un bien mueble consistente en una balanza ... producto de un escalamiento ocurrido en la Escuela Segundo Ruiz Belvis de la Playa de Ponce ...".* (Énfasis suplido.) Apéndice, pág. V. En virtud de la Regla 35 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y de la jurisprudencia mencionada, estas alegaciones comunicaron un mensaje de igual significado al de la frase "a sabiendas de que era un objeto sustraído ilegalmente durante un escalamiento". Así lo revela la prueba.

## III

El 7 de agosto de 1988 ocurrió un escalamiento en la escuela Segundo Ruiz Belvis de la Playa de Ponce de la cual se sustrajo una balanza. E.N.P., pág. 2. El policía Vladimir Salcedo Aguilera estaba a cargo de la investigación. Íd.

Tres (3) días después, el 11 de agosto, Salcedo Aguilera daba rondas por la Calle Padre Noel de la Playa de Ponce. Como a las 11:40 P.M., pasaron frente a él dos (2) individuos en una bicicleta cargando una caja. En ese instante, una

persona detuvo al agente Salcedo Aguilera y le *informó* que el objeto que cargaban dichos individuos posiblemente era hurtado. Salcedo Aguilera decidió investigar. Siguió la dirección indicada por el informante y llegó a la intersección con la 65 de Infantería de la Playa de Ponce. E.N.P., pág. 1. Vio a los individuos, se les acercó y detuvo a Saliva Valentín. Sin que surgiera reparo alguno, éste le mostró el contenido de la caja. E.N.P., pág. 2. Salcedo Aguilera observó una balanza, le preguntó su procedencia y Saliva Valentín le contestó que "se la había encontrado". E.N.P., pág. 2. Entonces, el sargento allí presente le ordenó que se personara al Cuartel de la Policía de la Playa de Ponce. E.N.P., pág. 2.

Fue interrogado por espacio de dos (2) horas. Los agentes examinaron y ocuparon la balanza. E.N.P., pág. 2. Después, el policía Salcedo Aguilera pudo verificar que su número de identificación coincidía con la sustraída en el escalamiento de la escuela. Así lo confirmó la Sra. Gloria Alfonso Archeval, empleada del comedor escolar.

Como sostiene la mayoría del Tribunal, esta prueba fue "suficiente para activar razonablemente" la inferencia de conocimiento sobre la procedencia ilegal de la balanza. Sentencia, pág. 5. Y es que la explicación de Saliva Valentín de que se la "había encontrado" es increíble, por no decir ridícula. Las fotografías en evidencia reflejan una balanza de pesar que luce casi nueva, brillosa y en excelente estado. La parte superior del mecanismo es de aproximadamente una circunferencia de seis (6) a ocho (8) pulgadas, con un "plato" más grande.

## IV

Esa misma prueba derrota la contención de que en la ocupación de la balanza en el caso de autos se efectuó un arresto y un registro ilegal.

La Regla 11(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, autoriza a un policía a efectuar un arresto sin orden judicial "[c]uando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito

grave (*felony*), independientemente de que dicho delito se hubiere cometido o no en realidad".

A su amparo hemos sostenido arrestos basados en confidencias si se establece una o más de las circunstancias siguientes: (a) que el confidente ha suministrado información correcta previamente; (b) que la confidencia conduce hacia el criminal en términos de lugar y de tiempo; (c) que la confidencia ha sido corroborada por observaciones del agente o por información proveniente de otras fuentes, y (d) que la corroboración se relaciona con actos delictivos cometidos o en proceso de cometerse. *Pueblo v. Díaz Díaz*, 106 D.P.R. 348, 354 (1977); *Pueblo v. Flores Valentín*, 88 D.P.R. 913 (1963).

Esa es la situación de autos. La intervención policiaca estuvo justificada por razón de la hora (casi medianoche), se observaron dos (2) individuos en una bicicleta cargando una caja y una persona les comunicó que "el objeto que cargaban los susodichos individuos en la bicicleta *posiblemente* era un objeto hurtado ...". (Énfasis suplido.) E.N.P., pág. 1. Esa confidencia, unida a las observaciones previas, fue suficiente para configurar, en un ánimo prevenido y razonable, motivos fundados para creer que se había cometido un delito grave. ¿Podría el policía Salcedo Aguilera ignorarlas?

La expresión "posiblemente" denota "que puede ser o suceder". Y esa eventualidad precisamente recoge la psicodinámica del concepto de *motivos fundados*. Ni la Constitución ni las leyes le exigen a la Policía certeza matemática ni don de profesías; sólo un conocimiento básico de esa posibilidad fundado en una apreciación razonable de sus observaciones o información que se le suministra. Lo contrario sería imponerle a la Policía unas normas utópicas, producto más bien de una asepsia bibliotecaria judicial. Bajo este prisma, el agente Salcedo Aguilera tuvo motivos fundados y procedió a investigar. Se dirigió hacia donde le indicó el confidente. Allí, se le acercó a los individuos y

detuvo a Saliva Valentín, quien conducía la bicicleta. Sin mediar mas palabras, éste le mostró el contenido de la caja y expuso a *plena vista* la balanza. El que la observación del agente fuera el resultado de una conducta deliberada no altera su legalidad. La exigencia de que el descubrimiento se haga "inadvertidamente" ha cesado de ser una condición necesaria de la *doctrina de plena vista*. Y es que en la "prevención e investigación del crimen la Policía no es una esfinge egipcia obligada a adoptar una actitud reservada o enigmática". *Pueblo v. Conde Pratts*, 115 D.P.R. 307, 341 (1984).

Como Salcedo Aguilera conocía y estaba a cargo de la investigación sobre una balanza sustraída tres (3) días antes en la escuela del sector, le preguntó su procedencia. La explicación de Saliva Valentín de "que se la había encontrado" despejó cualesquiera dudas. La identificación posterior de que era hurtada simplemente demostró cuan oportuna, razonable y apropiada fue la intervención y apreciación del agente Salcedo Aguilera.